TAFUA M. SEUMANUTAFA, Claimant

v.

TAFAOA FAAUMU, AUKUSO TUIVETA MISA, KERETI L.
MATA'UTIA, IOELU UTU, TIFILAU LOGONA, and
LIUGALUA TAPUOLA VAITAUTOLU, Objectors

[In the Matter of Matai Title "LAIE" of the Village of Fitiuta]

High Court of American Samoa
Land and Titles Division

MT No. 5-90

February 9, 1991

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge,
VAIVAO, Associate Judge, MATA'UTIA, Associate Judge, and
MAILO, Associate Judge.

Counsel: For Claimant, Lutu T. Fuimaono
For Objector Tafaoa Faaumu, Faiivae A. Galea'i
For Objector Aukuso Tuiveta Misa, Gata E. Gurr & Sala Samiu
For Objector Kereti L. Mata'utia, Tauese P.F. Sunia

"Laie" is a to'oto'o or high talking chief in the village of Fitiuta on
the island of Ta'u, Manu'a.

Tafua M. Seumanutafa offered the title for registration in his own name. There were six objectors, and the matter was referred by the Registrar to the Office of Samoan Affairs and thence to the High Court. Two of the objectors failed to appear despite notice, and a third withdrew shortly before the day set for trial. The candidates who appeared at trial were claimant Tafua and objectors Tafaoa, Tuiveta, and Kereti.

## I. Motions to Disqualify

Counsel for candidate Kereti moved to disqualify the other three candidates on the ground that none of their petitions contained the signatures of twenty-five blood members of the family who reside in American Samoa, as required by statute. See A.S.C.A. §§ 1.0405(b), 1.0406(b). Counsel for candidate Tafaoa pointed out that this requirement does not apply "[i]n the event the family does not have a sufficient number of members qualified as herein required to support the claim." A.S.C.A. § 1.0405(b); see A.S.C.A. § 1.0405(d).

The difficulty with this argument is that candidate Kereti was able to obtain 158 signatures, all of them apparently valid. The paucity of signatures on the other candidates' lists (at least in the case of Tafaoa and Tuiveta) would appear to be due not to an insufficiency of family members living in American Samoa, but to an insufficiency of family members living in American Samoa who support the candidates in question. This is an important distinction, going to the heart of what the twenty-five signature requirement and the exception to it seem to be about. Also, no candidate submitted an affidavit with his petition attesting to the insufficiency of qualified family members, as is required in order to invoke the statutory exception.

Counsel for candidate Tafua had a somewhat different defense to the twenty-five signature rule: he offered to prove that his candidate had in fact obtained twenty-five signatures but had inadvertently turned in only twenty-three to the Registrar. Counsel showed the Court a document which did contain twenty-five signatures and which he said was Tafua's original petition. For some unexplained reason, the circulators of the petition did not turn in this original but decided to circulate a new one to the same people who had signed the old one. Possibly because two of the signatures on the new petition are so large as to take up two lines apiece, the circulators turned it in to the Registrar with two fewer signatures than were necessary. Counsel requested that we take judicial notice of the two additional names on Tafua's original petition.

Because the motion to disqualify these three candidates was not made until the day of trial, we consolidated our consideration of it with the merits of the case. Because our decision on the merits renders a formal ruling on the motion unnecessary, we make no such ruling. Candidates for matai titles should be advised, however, not to treat the twenty-five signature rule lightly. Its language appears to be mandatory; similar requirements have been held to be jurisdictional. The Court may yet find itself in the unfortunate position of having to disqualify a candidate who would otherwise be held best qualified to hold a matai title.

Counsel for candidate Kereti also made a motion to disqualify candidate Tafua on the ground that he was not born in American Samoa and does not fall within any of the statutory exceptions to the requirement of American Samoan birth. *See* A.S.C.A. § 1.0403. Apropos of this motion the Court was presented with two birth certificates, one from Western Samoa and one from American Samoa, appearing to attest the birth of a baby with the same name to the same parents on the same day but on different islands. Counsel for Kereti also presented what purported to be a copy of a 1982 letter from the Chief Immigration Officer of American Samoa to his counterpart in Western Samoa, to the effect that Tafua had renounced his American Samoa citizenship and turned in his passport for cancellation. Tafua, however, produced an apparently valid American Samoa passport, bearing his name and picture with a different number than the one mentioned in the letter. Our decision on the merits obviates further inquiry into the various questions raised by these documents, but we thank the candidates for an interesting afternoon.

## II. Best Hereditary Right

As with all matai title cases during the last few years, the Court had to decide whether to calculate hereditary right according to the traditional rule --- calculating each candidate's descent to the nearest titleholder --- or to the "Sotoa rule" by which all candidates' descent is traced from the original titleholder or from a common ancestor of all candidates. The advantage of the latter rule is that it avoids discrimination against clans which have not held the title for several generations but whose members, according to the tradition in many families, remain entitled to a fair chance at each new vacancy and perhaps even to some affirmative credit on the theory that each clan should have its turn at the title. Unfortunately, the candidates often

37

vigorously disagree about the facts that would be necessary to calculate descent from the original titleholder or any other such ancient ancestor. In the present case it seems clear that the first titleholder was called either Laie Alalaie, Laie Fiatau, or both, and that he was alive in about 1830. No two candidates agree, however, on who this Laie's children were.

There is closer agreement, although not unanimity, on who has held the title since Alalaie or Fiatau. The candidates agree, with scattered exceptions, that the Laie titleholders through whom the other candidates claim were real people who did hold the title. This militates in favor of the application of the traditional formula.

Tafua claims descent from Laie Fiatau. He traces his ancestry to a great-great-great-great-grandmother called Fesolata'i, whom he says was a daughter of the first Laie. There are no other Laie titleholders in his genealogy. This would give Tafua a 1/128 right to the title under either the traditional formula or the Sotoa formula.

Tafaoa claims that his mother's mother's father was Laie Sione or Tai, who is recognized by all candidates except Tuiveta as having been the second titleholder and the son of Laie Fiatau/Alalaie. Counsel for other candidates suggested that this number of generations (only four since the early 1800s) seems quite small. Assuming that his genealogy is correct, however, Tafaoa would have a 1/8 connection to the nearest titleholder. He would also have a 1/16 connection to the first titleholder.

Tuiveta Misa is son of Laie Misa. It is clear that Laie Misa held the title briefly about sixty or seventy years ago, just before Laie Aniva. He never registered the title as required by law, for no apparent reason other than that he never got around to it during the three or four years he was holding the title. Registration of matai titles was a fairly new practice, and transportation between Manu'a and Tutuila was difficult and irregular. There is no suggestion that the whole family did not recognize Misa as the Laie during this time, or that there was any other legal obstacle to his registering of the title had he chosen to do so. In these circumstances, and for the limited purpose of calculating Tuiveta's blood relationship to the title, we hold that Misa should be counted as a titleholder. This gives Tuiveta a 1/2 hereditary right to the title according to the traditional formula. (Tuiveta also claims that Laie Misa was one of four children of Faioa, whom he also claims was the only child of Laie Alalaie. The other candidates disagree. If correct, this genealogy would give Tuiveta a 1/8 relationship to the first

38

titleholder.)

Kereti is the son of a daughter of Laie Aniva, whom all candidates recognize as having held the title. This means that his right to the title according to the traditional formula is 1/4. (Kereti also claims that his grandfather Aniva was the great-great-grandson of Faioa, the daughter of Laie Fiatau. This would give him a 1/128 relationship to the first titleholder.)

We find that Tuiveta prevails on the issue of hereditary right, with a 1/2 relationship to Laie Misa. Kereti is second, with a 1/4 relationship to Laie Aniva. It is more difficult to evaluate the evidence presented by Tafaoa and Tafua, but Tafaoa appears to rank third and Tafua fourth.

### III. Support of the Clans

The second statutory criterion is the support of the majority or plurality of the customary clans within the family. The candidates are in hopeless disagreement about how many clans there are in the family, what they are called, and from whence they derived. One reason for this is that Laie Taulago, the most recent titleholder, paid no particular attention to clans in family gatherings and *fa'alavelave*. This may also have been true under the previous titleholder, Laie Aniva. It is therefore arguable that a custom has evolved within the family whereby the whole family operates as one clan.

It also appears, however, that during the five family meetings held in an effort to choose a successor to Laie Taulago, there were certain recognized hereditary groups or "sides" within the family. Two clear instances of such groups were the descendants of Laie Misa (whose spokesman was Tuiveta) and the descendants of Aniva (whom at least one other candidate referred to as constituting candidate Kereti's "side"). It appears that candidate Tafaoa and an elderly chief named Te'i Lanu also represent distinct groups within the family. Tafaoa identifies himself as being from the Sione or Tai clan, and Te'i is identified by candidate Kereti as a member of the Fiatau clan.

Candidate Kereti presented the most comprehensive theory of the operation of customary clans within the Laie family. In his theory there are eight clans, each composed of the descendants of a particular Laie titleholder. Those family members who are descended from more than

39

one titleholder are members only of the clan associated with their most recent ancestor. There is no clan associated with the most recent holder, Taulago, apparently because during his lifetime his children chose to remain active in the clan of his father Aniva. The judges are aware of other families in which clans are derived according to this system or a similar one. We note, moreover, that Kereti's list of clans is virtually identical to that given by Taulago, the victorious candidate in the last Laie title case, MT No. 25-63.

Whether the number of clans is one, three, four, five, or eight, Kereti prevails on the question of clan support. It is clear both from the petitions and from the various accounts of the family meetings that the overwhelming majority of the family supports Kereti. According to a list compiled by Kereti and not effectively contradicted by any other candidate, the 158 signatures on his petition include substantial numbers from each of eight clans. Even if there are fewer than eight clans, and even giving each other candidate the benefit of the doubt with respect to majority support within his own clan --- and this includes giving Tafua the benefit of the doubt with respect to the existence of the Fesolata'i clan, which is denied by the other three candidates --- Kereti is the only candidate who can demonstrate substantial strength outside his own clan. His support includes, at the very least, the Aniva clan and also the group whose spokesman is Te'i and whom Kereti identifies as the Fiatau clan. These two groups account for thirty-four of Kereti's signatures. No matter how the remaining 124 are divided, it would be difficult for Kereti not to prevail over the other candidates' twenty-three, twenty-two, and fifteen supporters. It is also clear that an overwhelming consensus at most of the family meetings supported Kereti.

We conclude that Kereti prevails on the issue of family support and that the other three candidates are tied for a distant second.

## IV. Forcefulness, Character, and Knowledge of Samoan Custom

All the candidates had strong and weak points with respect to the statutory criterion of forcefulness, character, and knowledge of Samoan custom.

Tuiveta is seventy-four years old and presumably has many of the virtues that tend to develop with age. These virtues have unfortunately not been manifested in the family context. Although Tuiveta says he is standing for the title only in order to unite the family,

40

he does not recognize any of the other three candidates (or, by strong implication, either of the last two Laie titleholders) as blood members of the family. His attitude on this and many other questions, moreover, is a vehement one that does not seem to admit the possibility of compromise.

Tafaoa gave long and loyal service to Laie Taulago. The Tafaoa title has an ancient and important relationship to the Laie title, and in this Tafaoa appears to have performed his duties well. His actions have demonstrated his good character more clearly than any words could do. His familiarity with the finer points of Samoan custom and chiefly language, however, is not as well developed as that of the other candidates.

Tafua, notwithstanding any lingering doubts about the matter of his two birth certificates, more than adequately demonstrated his forcefulness and knowledge of Samoan custom. He is perhaps the best speaker among the candidates, has attended college, and has held a number of important positions in the government and in the private sector.

Kereti is also an impressive candidate. Although his illegal use of an unregistered matai title (Tua'au) stands against him, it may be said in mitigation that this was apparently done out of ignorance rather than malice and that there has been no apparent objection to his use of the title until now. This does not appear to have been a situation in which one candidate for a title has deliberately defied the law in order to gain a strategic advantage over his rivals. In general, Kereti is an intelligent and educated man whose character and forcefulness have been demonstrated by success in business and in government service, as well as by his many services to the Laie family.

It is the consensus of the judges that Tafua and Kereti prevail on the issue of forcefulness, character, and knowledge of Samoan custom, followed by Tafaoa and Tuiveta.

## V. Value to the Family, Village, and Country

The judges find that Kereti prevails on the fourth criterion, value to the family, village, and country. The factors that entered into consideration of the criterion of forcefulness, character, and knowledge of Samoan custom also figure heavily in the calculation of a candidate's

value to the family, village, and country. In addition, Kereti's strong support within the family is a factor that must be considered in estimating his potential value as the Laie.

### VI. Conclusion

Kereti prevails over Tuiveta on the second, third, and fourth criteria. Kereti prevails over Tafua on the first, second, and fourth criteria and is tied with him on the third criterion. Kereti prevails over Tafaoa on the first, second, third, and fourth criteria.

We therefore hold that Kereti L. Mataʻutia is entitled to hold the Laie title.

It is so ordered.